**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Melvin Brown | : | |
| 1449 Franklin Ave. | : | |
| Apt. A | : | |
| Columbus, Ohio 43205 | : | |
| | : | |
| -and- | : | Civil Action No. 2:16-cv-00595 |
| | : | |
| Allen Smith | : | JUDGE |
| 1283 Berwick Arms Place | : | |
| Columbus, Ohio 43227 | : | |
| | : | |
| -and- | : | |
| | : | **Complaint** |
| Aaron Ford, | : | |
| 1676 Clyde Place | : | **Jury Demand Endorsed Hereon** |
| Columbus, Ohio 43227 | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| Easy Street Cafe | : | |
| 197 Thurman Ave. | : | |
| Columbus, OH 43206 | : | |
| | : | |
| -and- | : | |
| | : | |
| GMS Feta Properties I, LLC | : | |
| 197 Thurman Ave. | : | |
| Columbus, OH 43206 | : | |
| | : | |
| -and- | : | |
| | : | |
| GMS Feta Properties II, LLC | : | |
| 197 Thurman Ave. | : | |
| Columbus, OH 43206 | : | |
| | : | |
| -and- | : | |
| | : | |
| GMS Feta Properties III, LLC | : | |
| 197 Thurman Ave. | : | |
| Columbus, OH 43206 | : | |

-and-                                            :
                                                 :
GMS Feta Properties IV, LLC                      :
197 Thurman Ave.                                 :
Columbus, OH 43206                               :
                                                 :
     -and-                                       :
                                                 :
Easy Street Bexley                               :
a fictitious and/or unregistered trade name      :
2882 E Main St.                                  :
Columbus, OH 43209                               :
                                                 :
     -and-                                       :
                                                 :
George Stefanidis                                :
197 Thurman Ave.                                 :
Columbus, OH 43206.                              :
                                                 :
                        Defendants.   :
                                                 :

## COMPLAINT

NOW COME Plaintiffs Melvin Brown ("Plaintiff Brown"), Allen Smith ("Plaintiff Smith"), and Aaron Ford ("Plaintiff Ford") (collectively "Plaintiffs") and proffer this Complaint for damages against Defendants:

**I.      JURISDICTION AND VENUE**

1.      This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*., the Ohio Minimum Fair Wage Standards Act, O.R.C. Chapter 4111 ("the Ohio Wage Act"), the Ohio Prompt Pay Act, O.R.C. § 4113.15 ("OPPA"), and 28 U.S.C. §1331. This action is also brought under Ohio Laws Against Discrimination, R.C. Chapter 4112 ("Chapter 4112").

2.      Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 29 U.S.C. § 1332(e), which provides for original jurisdiction of Plaintiffs' claims arising under the law of the United

States and over actions to secure equitable and other relief. This Court's jurisdiction in this matter is also predicated upon 28 U.S.C. §1367 as this Complaint raises additional claims pursuant to the laws of Ohio, over which this Court maintains supplemental subject matter jurisdiction because they form a part of the same case or controversy.

3.  Venue is proper in this forum pursuant to 28 U.S.C. §1391, because the Plaintiffs entered into an employment relationship with Defendants in the Southern District of Ohio, a substantial part of the events or omission giving rise to the claim occurred in the Southern District of Ohio, and Defendants have done substantial business in the Southern District of Ohio.

II.   **PARTIES**

   A.   **Plaintiffs**

4.  Plaintiff Melvin Brown is an individual, United States citizen, and a resident of the State of Ohio living in the Southern District of Ohio.

5.  At all relevant times herein, Plaintiff Brown should have been classified as an hourly, non-exempt employee of Defendants as defined in the FLSA and the Ohio Wage Act.

6.  Plaintiff Allen Smith (aka "Troy") is an individual, United States citizen, and a resident of the State of Ohio living in the Southern District of Ohio.

7.  At all relevant times herein, Plaintiff Smith should have been classified as an hourly, non-exempt employee of Defendants as defined in the FLSA and the Ohio Wage Act.

8.  Plaintiff Aaron Ford is an individual, United States citizen, and a resident of the State of Ohio living in the Southern District of Ohio.

9.  At all relevant times herein, Plaintiff Ford should have been classified as an hourly, non-exempt employee of Defendants as defined in the FLSA and the Ohio Wage Act.

10.     Plaintiff Brown, Plaintiff Smith and Plaintiff Ford will be collectively referred to as "Plaintiffs."

**B.  <u>Defendants</u>**

11.     Defendant Easy Street Cafe is a registered trade name of Defendant GMS Feta Properties I, LLC with its principal place of business in the Southern District of Ohio. Easy Street Cafe is a restaurant and/or bar that operates at two (2) locations in the Columbus metropolitan area. Easy Street Cafe opened its first restaurant in the German Village neighborhood of Columbus (hereafter "ESGV") and recently opened a second restaurant in the City of Bexley (hereafter "ESB") (hereafter collectively the "Easy Street Cafe Restaurants"). Defendant Easy Street Cafe may be served through its Registered Agent Sunbury Agency Corp., 119 East Granville Street, Sunbury, Ohio, 43074.

12.     Defendant GMS Feta Properties I, LLC is an Ohio limited liability company with its principal place of business in the Southern District of Ohio (hereafter "Defendant GMS I"). Defendant GMS I is the registrant of the Easy Street Cafe tradename and operates the two (2) Easy Street Cafe Restaurants. Defendant GMS I may be served through its Registered Agent Sunbury Agency Corp., 119 East Granville Street, Sunbury, Ohio, 43074.

13.     Defendant GMS Feta Properties II, LLC is an Ohio limited liability company with its principal place of business in the Southern District of Ohio (hereafter "Defendant GMS II"). Defendant GMS II operates the two (2) Easy Street Cafe Restaurants. Defendant GMS II may be served through its Registered Agent Sunbury Agency Corp., 119 East Granville Street, Sunbury, Ohio, 43074.

14.     Defendant GMS Feta Properties III, LLC is an Ohio limited liability company with its principal place of business in the Southern District of Ohio (hereafter "Defendant GMS

III"). Defendant GMS III operates the two (2) Easy Street Cafe Restaurants. Defendant GMS III may be served through its Registered Agent Sunbury Agency Corp., 119 East Granville Street, Sunbury, Ohio, 43074.

15.    Defendant GMS Feta Properties IV, LLC is an Ohio limited liability company with its principal place of business in the Southern District of Ohio (hereafter "Defendant GMS IV"). Defendant GMS IV operates the two (2) Easy Street Cafe restaurants. Defendant GMS IV may be served through its Registered Agent Sunbury Agency Corp., 119 East Granville Street, Sunbury, Ohio, 43074.

16.    Defendant George Stefanidis is an individual, United States citizen, and a resident of the State of Ohio living in the Southern District of Ohio who owns, controls and operates the two (2) Easy Street Cafe Restaurants and Defendants GMS I - GMS IV, and who otherwise conducts substantial business in the Southern District of Ohio.

17.    During relevant times, Defendant Stefanidis, as founder and owner of the two (2) Easy Street Cafe Restaurants and other Defendants to this action, has had operational control over significant aspects of the day-to-day functions of all Defendants, including the day-to-day functions, employment and pay of the Plaintiffs here.

18.    During relevant times, Defendant Stefanidis has had the authority to hire, fire and discipline employees, including Plaintiffs.

19.    During relevant times, Defendant Stefanidis has had the authority to set rates and methods of compensation of employees, including Plaintiffs.

20.    During relevant times, Defendant Stefanidis has had the authority to control the work schedules and employment conditions of employees, including Plaintiffs.

21.     During relevant times, Defendant Stefanidis has had ultimate authority and control of employment records.

22.     During relevant times, Defendant Stefanidis and the other Defendants to this action have all mutually benefitted from the work performed by Plaintiffs.

23.     During relevant times, Defendant Stefanidis and the other Defendants to this action have not acted entirely independently of each other and have not been completely disassociated with respect to Plaintiffs.

24.     During relevant times, Defendant Stefanidis and the other Defendants to this action shared the services of Plaintiffs.

25.     During relevant times, Defendant Stefanidis and the other Defendants to this action acted directly or indirectly in the interest of each other in relation to Plaintiffs.

26.     Defendants are and have been, jointly and individually, "employers" as that term is defined by the FLSA, O.R.C. Chapter 4111, Ohio Constitution Art. 2 §34a, and Ohio Revised Code, Chapter 4112, doing business in the Southern District of Ohio.

27.     At all times relevant herein, Plaintiffs were employees of Defendants as defined in the FLSA, O.R.C. Chapter 4111, Ohio Constitution Art. 2 §34a and Chapter 4112.

28.     At all times relevant to this action, Defendants have been engaged in commerce or in the production of goods for commerce, and/or the business activities of Defendants constituted an enterprise engaged in commerce within the meaning of the FLSA.

29.     Upon information and belief, Defendants' employees were engaged in interstate commerce and Defendants have annual gross volume sales and/or business in an amount not less than $500,000.00.

30.     During relevant times, Defendants suffered and permitted Plaintiffs to work more than forty (40) hours per workweek, while not compensating them for all such hours worked over forty (40) at a rate of at least one and one-half times their regular rates.

31.     Upon information and belief, Defendants, at all times relevant hereto, were fully aware of the fact that they were legally required to comply with the wage and overtime payment laws of the United States and of the State of Ohio as well as record keeping laws of the State of Ohio.

32.     During relevant times, Defendants had knowledge of and acted willfully in regard to their conduct described herein.

33.     Defendants are in possession and control of necessary documents and information from which Plaintiffs would be able to precisely calculate damages.

### III.     FACTS

#### A.     Failure to Pay Overtime Wages.

34.     Plaintiff Brown began working for Defendants on March 14, 2016 as a cook for the Easy Street Cafe Restaurants before his employment was terminated on April 24, 2016.

35.     Plaintiff Smith began working for Defendants on October 15, 2015 as a cook for the Easy Street Cafe Restaurants before his employment was terminated on May 15, 2016.

36.     Plaintiff Ford began working for Defendants on April 2, 2016 as a cook for the Easy Street Cafe Restaurants before his employment was terminated on May 7, 2016.

37.     During the first weeks of Plaintiff Brown's employment with Defendants as a cook, Plaintiff Brown worked at both Defendants' restaurant locations, ESGV and ESB. Each day, Plaintiff Brown opened the restaurant at ESB in the early morning hours and continued to work at that location until the early afternoon. Plaintiff Brown was required to clock out at ESB

before he left. Then, Plaintiff Brown traveled to ESGV where he clocked in and worked a second shift, often until the restaurant closed in the early morning hours the following day. At the completion of his second shift at ESGV, Plaintiff Brown clocked out.

38.     During this time, Plaintiff Brown worked at least forty (40) hours per week at ESB and then additional hours within the same workweek at ESGV. However, Defendants did not compensate Plaintiff Brown at time and one-half times his regular rate for his hours worked over forty (40).

39.     Instead, Defendants issued separate paychecks to Plaintiff Brown for his work at ESB and ESGV, but neither paycheck compensated Plaintiff Brown for his hours worked over forty (40) in a workweek at time and one-half his regular rate of pay. Additionally, Defendants failed to account for all hours worked by Plaintiff Brown while working at both restaurant locations so that he did not even receive straight-time pay for all hours worked for Defendants in a workweek.

40.     Following approximately two weeks, Plaintiff Brown began working exclusively at ESB. Although Plaintiff Brown continued working over forty (40) hours per workweek, Defendants failed to compensate Plaintiff Brown at time and one-half his regular rate for his hours worked over forty (40) in a workweek. Defendants also failed to properly account for all hours worked by Plaintiff Brown at ESB so that he did not even receive straight-time pay for all hours worked in a workweek.

41.     Plaintiff Smith likewise regularly worked over forty (40) hours per week as a cook at both ESB and ESGV throughout his employment with Defendants, but Defendants did not compensate Plaintiff Smith at time and one-half times his regular rate for his hours worked over forty (40) in a workweek.

42.     Plaintiff Ford also regularly worked over forty (40) hours per week as a cook at ESB throughout his employment with Defendants, but Defendants did not compensate Plaintiff Smith at time and one-half times his regular rate for his hours worked over forty (40) in a workweek.

43.     Plaintiffs' primary duties did not include the performance of office or non-manual work directly related to the management or general business operations of the Defendants.

44.     Plaintiffs' primary duties did not include the management of any employee, contract or other business enterprise of the Defendants.

45.     Plaintiffs' job as a cook did not include work requiring advanced knowledge in a field of science or learning because his primary duties were not predominately intellectual in character and did not require consistent exercise of discretion or judgment.

46.     Plaintiffs' primary duties did not include the exercise of discretion or independent judgment with respect to matters of significance.

47.     Plaintiffs' primary duties did not include creating Defendants' menu, ordering supplies, maintain inventories or the hiring/firing/discipline of any of Defendants' employees.

48.     Plaintiffs were closely supervised by the Defendants' General Manager Joe (unknown last name) and Defendant Stefanidis.

49.     Plaintiffs were not "executive," administrative," or "professional" employees, as those terms are defined under the FLSA or the Ohio Wage Act.  See 29 C.F.R. §§541.00, et seq.

50.     Plaintiffs were not "learned professional" employees, as that term is defined under the FLSA or the Ohio Wage Act.  See 29 CFR §541.301.

**B. Retaliation Against Plaintiff Brown**.

51.     On or about April 14, 2016, Plaintiff Brown asked Defendants about unpaid overtime compensation that should have been paid for the previous week and when he would receive payment. Defendant Stefanidis told Plaintiff Brown that he would be paid some of the unpaid overtime compensation on Sunday, April 17, 2016.

52.     When Plaintiff Brown did not receive such compensation on that date, he first asked the general manager of Defendants' restaurants, Joe (unknown last name), about when he could expect to receive his overtime compensation. Joe directed Plaintiff Brown to call Defendant Stefanidis. Plaintiff Brown asked Defendant Stefanidis when he could expect to receive his overtime compensation. Defendant Stefanidis replied that he would call Plaintiff Brown back, but he failed to do so.

53.     Instead, Joe called Plaintiff Brown back and stated that Defendants do not pay overtime compensation. Thereafter, Plaintiff Brown called Defendant Stefanidis to discuss what Joe told him. Defendant Stefanidis promised he would start paying Plaintiff Brown the overtime wages owed to him.

54.     On April 21, 2016, Plaintiff Brown called the United State Department of Labor, Wage and Hour Division (hereafter "DOL") and left a message about Defendants' improper wage practices and the overtime compensation owed to him.

55.     The following day, Friday, April 22, 2016, Plaintiff Brown received a return phone call from the Ohio Department of Commerce's Wage and Hour Division ("Ohio Wage and Hour") and was told how to prepare and submit a formal written complaint about Defendants' unlawful pay practices.

56. That same day, Plaintiff Brown discussed his complaint to the DOL and his earlier conversation with the Ohio Wage and Hour with Plaintiff Smith and the next steps to take regarding Defendants' unlawful pay practices. Plaintiff Brown also discussed his phone calls with the DOL and the Ohio Wage and Hour with a few of Defendants' servers and bartenders.

57. On Saturday, April 23, 2016, Defendant Stefanidis' personal assistant, Ed (unknown last name) asked Plaintiff Brown whether his overtime pay issue had been resolved. Plaintiff Brown stated that it had not been resolved and that he had called the DOL to initiate an investigation into Defendants' overtime payment practices.

58. On Sunday, April 24, 2016, Plaintiff Brown arrived at ESB early for his brunch shift. He worked the brunch shift without incident. Plaintiff Brown noted that the brunch was one of the best brunches he had worked since beginning his employment with Defendants.

59. Shortly after that brunch shift ended, Joe called Plaintiff Brown and stated that an unnamed customer had purportedly complained that Plaintiff Brown and another employee had been drinking Bloody Mary mixed drinks while working the brunch shift. Plaintiff Brown told Joe that they had not been drinking any such drinks that day.

60. Plaintiff Brown stated what had occurred during the shift was that he and another server had taken sample sips of new draft beers at the restaurant to ensure the quality was acceptable and to be able to discuss the beers' taste with Defendants' customers.

61. Plaintiff Brown also noted that they had been sharing a single glass to sample the draft beers and that they took very small sips in testing the beers. He further reminded Joe that he had performed testing of this nature on numerous occasions before to ensure quality and to be able to rate and recommend Defendants' products to customers. Plaintiff Brown stated that neither Joe nor Defendants had ever instructed Plaintiff Brown not to perform such samplings or

otherwise expressed disapproval of the tastings, and that the practice was commonplace at Defendants' Easy Street Cafe restaurants and the restaurant industry as whole.

62.     Joe acknowledged that sampling Defendants' products was permissible. Joe further confirmed that Plaintiff Brown should taste test the products to ensure proper quality and make qualified recommendations when asked by Defendants' customers.

63.     However, Joe then stated to Plaintiff Brown "Well, you are not happy here anyway." He continued by stating Defendant Stefanidis wanted to take the restaurant "in a different direction and doesn't need your services anymore."

64.     Plaintiff Brown responded to Joe by stating that his termination was retaliatory in nature because he had just complained to the DOL and Ohio Wage and Hour about Defendants' unlawful pay practices only days earlier.

65.     Joe replied that he completely understood Plaintiff Brown's frustration at being terminated days after making his wage complaints, that Plaintiff Brown should "do what [he] had to do", that Joe had been telling Defendant Stefanidis about Defendants' need to correct their improper wage payment practices for years, but that he was just trying to keep his job.

66.     A few moments after this phone call ended, Joe called Plaintiff Brown back and stated Defendant Stefanidis had just offered to pay Plaintiff Brown the unpaid overtime wages owed to him. Plaintiff Brown declined indicating that he instead would seek legal representation.

**C. Race Discrimination Against Plaintiffs**.

67.     In addition to failing to properly pay overtime wages to Plaintiffs throughout their employment, Defendants also subjected the Plaintiffs to a variety of racist and derogatory comments throughout their employment.

68.     Plaintiffs are all African-Americans. Other than the three (3) Plaintiffs, only one (1) other African-American worked at Defendants' Easy Street Cafe Restaurants.

69.     At all relevant times, Plaintiffs were supervised by Defendant Stefanidis and a former employee of Defendants, James (unknown last name).

70.     On one occasion after the three (3) Plaintiffs began working for Defendants, Plaintiff Smith heard James tell Defendant Stefanidis that there were "too many niggers on this staff." Defendant Stefanidis did not reprimand James for this racist remark and otherwise failed to take any disciplinary action.

71.     Almost immediately after Plaintiff Brown began working for Defendants, he was also involved in an altercation with James during which he called Plaintiff Brown a "nigger," among other highly-offensive names and remarks. James proceeded to assault Plaintiff Brown. Plaintiff Smith, who was sitting in a nearby car at the time, attempted to intervene on Plaintiff Brown's behalf. Then, James called Plaintiff Smith a "monkey" and continued to swing at both Plaintiffs Brown and Smith.

72.     Although James' employment was terminated after his assault of Plaintiffs Brown and Smith, all three (3) Plaintiffs were repeatedly subjected to other racist and discriminatory comments and remarks throughout their employment due to being African-American. The derogatory comments often came from Defendants' owner, Stefanidis.

73.     Defendant Stefanidis encouraged racist and discriminatory conduct at his restaurants and repeatedly made racist remarks about Plaintiffs due to their race.

74.     On Plaintiff Brown's very first day of employment, Defendant Stefanidis indicated he wanted to speak to Plaintiff Brown by saying "Hey Brother" to get his attention. A

female server who heard the comment pulled Plaintiff Brown to the side and stated he should not let Defendant Stefanidis speak to him like that.

75.     Defendant Stefanidis knew that Plaintiffs Smith and Ford were cousins of Plaintiff Brown.

76.     Despite this knowledge that Plaintiffs were cousins and not brothers, Defendant Stefanidis would repeatedly refer to the Plaintiffs collectively as "the brothers". He would also address the Plaintiffs individually as "brother" or use words of similar effect.

77.     Defendant Stefanidis did not refer to other employees who are not of African-American descent as "brother" or "brothers."

78.     On another occasion after a negative restaurant review was published, Defendant Stefanidis made reference to Plaintiffs in a text message by again referring to the "big bass [*sic*] brothers" working for Defendants' Easy Street restaurants and chastised Plaintiffs for the negative food review. As noted above, the Plaintiffs were the only African-American employees working at Defendants' Easy Street Cafe Restaurants at the time this racist comment was made.

## IV.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION:
### FLSA –UNPAID OVERTIME

79.     All of the preceding paragraphs are realleged as if fully rewritten herein.

80.     The FLSA requires that employees receive overtime compensation for hours worked in excess of forty (40) per week. 29 U.S.C. § 207(a)(1).

81.     The FLSA requires that covered employees be compensated for every hour worked in a workweek.  See 29 U.S.C. § 206(b).

82.     The FLSA requires that covered employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek.  See 29 U.S.C. § 207(a)(1).

83.     Plaintiffs were covered employees entitled to the FLSA's protections.

84.     Plaintiffs were not exempt from receiving FLSA overtime benefits because, *inter alia*, they were not "executive," "administrative," or "professional" employees, as those terms are defined under the FLSA.  See 29 C.F.R. §§ 541.0, et seq.

85.     Plaintiffs were not exempt from receiving FLSA overtime benefits because, *inter alia*, they were not "learned professional" employees, as that term is defined under the FLSA. See 29 CFR § 541.301.

86.     Defendants jointly are covered employers required to comply with the FLSA's mandates.

87.     Defendants jointly violated the FLSA with respect to Plaintiffs by failing to pay Plaintiffs at the rate of one and one half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

88.     In violating the FLSA, Defendants jointly acted willfully and with reckless disregard of clearly applicable FLSA provisions.

89.     The exact total amount of compensation, including overtime compensation, that Defendants have failed to pay Plaintiffs is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendants or were not kept by Defendants.

90.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and continue to suffer damages. Plaintiffs seek unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available.

**SECOND CAUSE OF ACTION:**
**The Ohio Wage Act - Failure to Pay Overtime**

91.     All of the preceding paragraphs are realleged as if fully rewritten herein.

92.     This claim is brought under Ohio Law.

93.     The Ohio Wage Act requires that covered employees be compensated for every hour worked in a workweek.  See O.R.C. §§ 4111 et seq., See also, 29 U.S.C §206(b).

94.     The Ohio Wage Act requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in one workweek, "in the manner and methods provided in and subject to the exemptions of section 7 and section 13 of the "Fair Labor Standards Act of 1938.  See O.R. C. § 4111.03 (A), See also, 29 U.S.C. § 207 (a)(1).

95.     Plaintiffs were covered employees entitled to the Ohio Wage Act's protections.

96.     Plaintiffs were not exempt from receiving Ohio Wage Act overtime benefits because he was not an exempt "executive," "administrative," or "professional" employee, as those terms are defined under the FLSA.  See O.R.C. 4111.03(A), See also 29 C.F.R. §§ 541.0, et seq.

97.     Plaintiffs were not exempt from receiving FLSA overtime benefits because, *inter alia*, he was not a "learned professional" employee, as that term is defined under the FLSA.  See 29 CFR §541.301.

98.     Defendants are covered employers required to comply with the Ohio Wage Act's mandates.

99.     Defendants jointly violated the Ohio Wage Act with respect to Plaintiffs by failing to compensate them at the rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

100.    In violating the Ohio Wage Act, Defendants acted jointly, willfully and with reckless disregard of clearly applicable Ohio Wage Act provisions.

101.    For Defendants' joint violations of the Ohio Wage Act, Plaintiffs have suffered and continue to suffer damages, Plaintiffs seek unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available.

## THIRD CAUSE OF ACTION:
## R.C. 4113.15 —OPPA VIOLATION

102.    All of the preceding paragraphs are realleged as if fully rewritten herein.

103.    Plaintiffs were each jointly employed by Defendants.

104.    During relevant times, Defendants were covered by the OPPA and Plaintiffs have been employed by Defendants within the meaning of the OPPA.

105.    The OPPA requires Defendants to pay Plaintiffs all wages, including unpaid overtime, on or before the first day of each month, for wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned by them during the last half of the preceding calendar month. *See* O.R.C. § 4113.15(A).

106.    During relevant times, Plaintiffs were not paid all wages, including overtime wages at one and one-half times their regular rate within thirty (30) days of performing the work. *See* O.R.C. § 4113.15(B).

107.    Plaintiffs' unpaid wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

108.     In violating the OPPA, Defendants acted willfully, without a good faith basis and with reckless disregard of clearly applicable Ohio law.

## FOURTH CAUSE OF ACTION:
## RECORDKEEPING VIOLATIONS OF THE OHIO WAGE ACT

109.     All of the preceding paragraphs are realleged as if fully rewritten herein.

110.     The Ohio Wage Act requires employers to maintain and preserve payroll or other records containing, among other things, the hours worked each workday and the total hours worked each workweek. *See* O.R.C. § 4111.08. *See also*, 29 C.F.R. §§ 516.2 *et seq.*

111.     During all times material to this complaint, Defendants were covered employers, and required to comply with the Ohio Wage Act's mandates.

112.     Plaintiffs were covered employees entitled to the protection of the Ohio Wage Act.

113.     During times material to this complaint, Defendants violated the Ohio Wage Act with respect to Plaintiffs by failing to properly maintain accurate records of all hours Plaintiffs worked each workday and within each workweek.

114.     In violating the Ohio Wage Act, Defendants acted willfully and with reckless disregard of clearly applicable Ohio Wage Act provisions.

## FIFTH CAUSE OF ACTION:
## RETALIATION IN VIOLATION OF THE FLSA - PLAINTIFF BROWN

115.     All of the preceding paragraphs are realleged as if fully rewritten herein.

116.     Plaintiff Brown was discharged by Defendants on April 24, 2016 in retaliation for opposing Defendants' improper pay practices and making complaints regarding the same days before his discharge. When Plaintiff Brown lodged the above-described complaints to

Defendants and to the DOL and the Ohio Wage and Hour, he was engaged in protected activity as defined by 29 U.S.C. § 215(a)(3).

117.    Defendants knew or had reason to know that Plaintiff Brown lodged the above-described complaints to Defendants and to the DOL and the Ohio Wage and Hour.

118.    It is a violation of the FLSA for an employer to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding."

119.    Plaintiff Brown has been damaged by Defendants' willful violation of the FLSA such that he is entitled to compensation therefore, including liquidated damages and attorney's fees.

<u>**SIXTH CAUSE OF ACTION:**</u>
**RETALIATION IN VIOLATION OF THE OHIO WAGE ACT –
PLAINTIFF BROWN**

120.    All of the preceding paragraphs are realleged as if fully rewritten herein.

121.    It is also a violation of the Ohio Wage Act for an employer to "discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding."

122.    When Plaintiff Brown was retaliated against and ultimately discharged from his employment as provided in the foregoing paragraphs, Defendants engaged in "prohibited acts" as that term is defined by Ohio Revised Code § 4111.13.

123.    Plaintiff Brown has been damaged by Defendants' violations of the Ohio Wage Act such that he is entitled to compensation therefore.

**SEVENTH CAUSE OF ACTION:**
**R.C. §4112.02 – RACE / NATIONAL ORIGIN DISCRIMINATION**

124.     All of the preceding paragraphs are realleged as if fully rewritten herein.

125.     Plaintiffs are members of a class protected from discrimination on the basis of race and/or national origin. Plaintiffs are African-American.

126.     During Plaintiffs' employment, similarly situated non-protected employees were treated more favorably than Plaintiffs.

127.     Defendant discriminated against Plaintiffs because of their race and/or national origin by subjecting Plaintiffs to disparate treatment; creating and encouraging a hostile work environment; subjecting Plaintiffs to racist comments; and/or otherwise discriminating against them in the terms, privileges, and conditions of their employment.

128.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer emotional distress and loss of salary, benefits and other terms, privileges, and conditions of employment for which Defendants are liable.

129.     Defendants' conduct was willful, wanton, reckless, and/or malicious for which Defendants are liable for compensatory damages, punitive damages, and reasonable attorneys' fees and costs.

130.     At all times material herein, Defendants acted in conscious and/or reckless disregard for Plaintiffs' rights, with great probability that its acts and omissions would cause substantial harm to Plaintiffs.

## V.     PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs request judgment against Defendants, jointly and individually, for an Order:

A.      Directing Defendants, at their own expense, to investigate and account for the number of hours actually worked by Plaintiffs per week, and because Defendants have failed to keep accurate records in accordance with Ohio Law, Plaintiffs are entitled to prove their hours worked with reasonable estimates;

B.      Awarding to the Plaintiffs unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by the FLSA;

C.      Awarding to Plaintiffs unpaid compensation, including overtime wages as to be determined at trial together with any liquidated damages allowed by Ohio Law;

D.      Awarding Plaintiffs costs and disbursements and reasonable allowances for fees of counsel and experts, and reimbursement of expenses;

E.      Awarding Plaintiffs such other and further relief as the Court deems just and proper;

F.      Issuing an injunction prohibiting Defendants from engaging in present, ongoing and future violations of the FLSA and Ohio Law;

G.      Granting Plaintiff Brown all damages resulting from Defendants' willful violation of the FLSA and Ohio Law by taking retaliatory actions against him, including liquidated damages and attorney's fees, and any other relief or recovery to which he is entitled due to such actions;

H.      Awarding Plaintiffs monetary damages resulting from Defendants' racial discrimination, including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, and front pay, compensatory damages and punitive damages in an amount to be determined at trial;

I. Granting the Plaintiffs leave to amend to file additional claims for relief or different causes of action should information become available through investigation and discovery; and

J. Rendering a judgment against Defendants for all damage, relief, or any other recovery whatsoever.

Respectfully submitted,

*/s/ Robert E. DeRose*
Robert E. DeRose (0055214)
Jason C. Cox (0095169)
**BARKAN MEIZLISH HANDELMAN GOODIN DEROSE WENTZ, LLP**
250 E. Broad Street, 10th Floor
Columbus, Ohio 43215
Phone: (614) 221-4221
Fax: (614) 744-2300
bderose@barkanmeizlish.com
jcox@barkanmeizlish.com

Matthew J.P. Coffman (0085586)
**COFFMAN LEGAL, LLC**
1457 S. High St.
Columbus, Ohio 43207
Phone: 614-949-1181
Fax: 614-386-9964
Email: mcoffman@mcoffmanlegal.com

Peter Contreras (0087530)
**CONTRERAS LAW, LLC**
PO Box 215
Amlin, Ohio 43002
Phone: 614-787-4878
Fax: 614-923-7369
Email: peter.contreras@contrerasfirm.com

*Attorneys for Named Plaintiffs*

## JURY DEMAND

Plaintiff requests a trial by a jury of eight (8) persons.

*/s/ Robert E. DeRose*
Robert E. DeRose (0055214)